THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MADELEINE GARZA, an individual,

        Plaintiff,

vs.

NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK,

        Defendant.

No. 3:18-cv-05106-BHS

**PLAINTIFF'S TRIAL BRIEF**

PLAINTIFF'S TRIAL BRIEF

3:18-cv-05106-BHS



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799 Facsimile: (253) 627-0654
www.pcvalaw.com

## I. INTRODUCTION

Plaintiff Madeleine Garza respectfully submits this trial brief to address the basic factual, legal, and evidentiary issues presented by this case.

As the Court knows, this case arises out of the Amtrak Cascades Train 501 derailment which occurred on December 18, 2017 near DuPont, Washington. Plaintiff's causes of action against National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak") include common law negligence and claims under the Washington Consumer Protection Act ("CPA"), RCW 19.86 *et seq*. As to her negligence claim, Amtrak admits that it is liable for compensatory damages proximately caused by the derailment and has withdrawn its affirmative defenses of failure to mitigate and allocation of fault. Plaintiff understands that the Court has bifurcated CPA claims from compensatory damages in Amtrak-related matters. Plaintiff thanks the Court for its work on this matter and looks forward to a spirited and concise presentation of the case.

## II. IDENTIFICATION OF THE PARTIES AND COUNSEL

The plaintiff in this matter is Madeleine Garza. She is represented by Darrell Cochran, Thomas Vertetis, Christopher Love, Nicholas Douglas, and Andrew Ulmer of Pfau Cochran Vertetis Amala, PLLC and Kim Putnam, Kathryn Potvin, and Dustin Dailey of Putnam Lieb Potvin. Defendant National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak") is represented by Tim Wackerbarth, Andrew Yates, and Warren Babb of Lane Powell PC and Mark Landman and John Bonventre of Landman Corsi Ballaine & Ford, PC.

## III. FACTUAL BACKGROUND

The Court is acquainted with the basic factual outline of events but, for purposes of evaluating some of the liability and damages issues, the following facts should prove useful.



A.  **Amtrak's Failure to Comply with the FAST Act**

In May 2015, eight people died and over 200 were injured when Amtrak Train 188 derailed outside of Philadelphia as it entered a curve exceeding the speed limit by more than 50 mph. In direct response to Amtrak 188, Congress passed the FAST Act in December 2015 to prevent these overspeed derailments caused by engineers who lost situational awareness.[1] For sections of track without Positive Train Control, the FAST Act required railroad carriers to "identify each main track location where there is a reduction of more than 20 mph from the approach speed to a curve, bridge, or tunnel." Section 11406(a). Railroad carriers had to develop speed limit action plans including "increased crew communication" to prevent overspeed derailments at the identified track locations. Section 11406(b).

The FAST Act placed these duties on the "railroad carrier," such as Amtrak, providing "commuter rail passenger transportation." 11406(a). Railroad carriers had the responsibility to identify FAST Track locations "in consultation with any applicable host railroad." *Id*. Sound Transit was the host railroad, not the railroad carrier. Subsection (b) of 11406 specifically places on the "railroad carrier described in subsection (a)", not the host railroad, the duty to develop a speed limit action plan to identify and mitigate all FAST Act locations.

Amtrak implemented the FAST Act through its speed limit action plan which identified permanent speed reductions on Amtrak's services. Amtrak implemented the speed limit action plan through the General Order for the territory, as the means of alerting the crew of the need to comply. Amtrak uses a General Order to communicate FAST Act locations to crew members.

---

[1] Fixing America's Surface Transportation (FAST) Act, Pub. L. No. 114-94.
PLAINTIFF'S TRIAL BRIEF

3:18-cv-05106-BHS

2 of 9



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799 Facsimile: (253) 627-0654
www.pcvalaw.com

Engineers and conductors are required to review General Orders before they operate on a host railroad. They would have reviewed the specific General Order for Amtrak 501. The General Order for Amtrak 501 set out the actions to be taken at FAST Act locations.

The General Order identified locations subject to the FAST Act on the Seattle to Portland route. But the General Order did not identify the curve at MP 19.8 as a FAST Act location, even though it should have. As multiple Amtrak witnesses testified, Amtrak did not comply with the FAST Act at this location. Additionally, conductors qualifying for operations on the Bypass, including Conductor Lingafelter, were not tested or trained on the FAST Act's requirements regarding MP 19.8, including its speed reduction verbal reminder requirement. The confluence of Amtrak's failures to comply with the FAST Act ultimately resulted in the December 18, 2017 derailment.

**B.      Madeleine Garza Sustained Significant Injuries as a Result of the Derailment**

Prior to the Amtrak train derailment, Ms. Garza was a healthy 18-year old girl with noncontributory past medical history. She had just graduated from high school in June 2017 and started college at Green River Community College. On December 18, 2017, Ms. Garza boarded Amtrak Train 501 at the Tukwila Station. She was traveling alone to visit her friends in Eugene. Ms. Garza remembers feeling the Amtrak train violently shaking just prior to its derailment and then hearing a sharp screech of metal. She does not have a clear memory about what happened immediately after that. She did not realize that at approximately 7:33 a.m., her train was traveling at 78-mph as it approached a curved section of track with a speed limit of 30-mph and derailed onto the highway. Charles Kubilius, a witness to the scene, found Ms.



Garza on her back lying on the ceiling inside of a train car which was overturned onto the highway.

Ms. Garza was checked into Tacoma General Hospital. Her injuries included the following: (1) complex sacral fractures; (2) fractures of the right superior and inferior pubic rami; (3) a lumbar transverse process fracture (L5); and (4) associated injuries including a liver laceration. Dr. Corman performed a surgical repair of the anterior pelvic ring and Dr. Cove performed a repair of the posterior pelvic ring and sacrum. She retained significant hardware from her surgeries which was partially removed in September 2018.

## IV. LEGAL AND EVIDENTIARY ISSUES
### A. Common Law Negligence

With respect to Plaintiff's negligence claim, Amtrak has admitted that it is liable for Plaintiff's compensatory damages resulting from the derailment. Through its qualified admission, however, Amtrak seeks to exclude any and all evidence which it will construe as "liability" evidence. As Plaintiff covers in her Response to Amtrak's Motions in Limine, Dkt. # 48, Plaintiff is entitled to present evidence regarding the speed, force, and direction of the impact of the train as evidence of the extent and nature of the Plaintiff's injuries. *Snyder v. General Electric Co.*, 47 Wn.2d 60, 68 (1955) (the court admitted testimony regarding a vehicle's speed, the number of passengers on the vehicle, the force of the impact, and the direction of the impact in an admitted liability trial); *Murray v. Mossman*, 52 Wn.2d 885, 888 (1958) (the court admitted photographs and witnesses' testimony regarding the photographs concerning the force and direction of the impact in an admitted liability rear-end collision case). This would include testimony regarding the scene of the derailment as well as photograph and



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799 Facsimile: (253) 627-0654
www.pcvalaw.com

video evidence. This evidence is not excludable "liability" evidence but highly relevant to present the nature and extent of Plaintiff's damages.

1. **General Damages**

Ms. Garza was a healthy 18-year old girl with no adverse physical health conditions prior to the train derailment. Since that fateful day, she has suffered multiple, life-altering injuries. After the derailment and following her pelvic stabilization surgeries, Ms. Garza remained hospitalized for ten days in Tacoma General Hospital. She lost considerable muscle mass and weight during this time (from 110 to 98 lbs.) This was an 18-year old girl who required a walker to move about the first floor of her home during the first few weeks after leaving the hospital. During this recovery time, she required assistance for basic household self-care. By the end of January 2018, she was able to transition to a cane until the latter part of February.

She endured overwhelming physical pain and relied upon prescribed medications, including opioids such as oxycodone, for several weeks. In addition to the severe injuries to her pelvic and sacrum region, she also suffered severe nerve pain in her left upper leg and foot and hypersensitivity to high and low temperatures to the point where she was unable to take warm showers without feeling significant leg pain.

Ms. Garza has suffered severe mental and physical pain and anguish as a result of the injuries she sustained from the derailment as well as lifelong physical limitations.

2. **Special Damages**

Amtrak will seek to exclude the introduction of Ms. Garza's past medical bills on the basis that they have paid all of her medical bills, despite approximately $150,000 of her medical


911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799 Facsimile: (253) 627-0654
www.pcvalaw.com

bills remaining unpaid to date, and Amtrak has yet to present evidence that it has indeed paid all of Ms. Garza's past medical bills.

Plaintiff's experts have identified the lifelong care and management which Ms. Garza will require, including but not limited to future physical medicine and rehabilitation treatment, orthopedic treatment, psychiatric treatment, group and couples therapy, future household and home services due to her physical limitations, and ergonomic equipment. Given the severity of Maddie's injuries, she has retained Cloie Johnson to offer opinions about her vocational future. Ms. Johnson evaluated Maddie's pre-injury earning capacity as commensurate with obtaining an Associate's degree and taking that level of education to the workplace and earning commensurate income of this level of education on a full time year round basis. Based on Ms. Johnson's opinions and the record in this case generally, Plaintiff's economic expert Lorraine Barrick, CPA, has distilled the economic losses of Maddie in present cash value. Ms. Barrick has found that the present cash value of Ms. Johnson's Life Care Plan is $372,342. Ms. Barrick has also calculated Plaintiff's future wage losses according to Maddie's pre and post-earning capacities based on three scenarios, ranging from $148,843 - $1,648,566.

B.  **Consumer Protection Act**

Plaintiff understands that the Court intends to bifurcate and consolidate the CPA claims arising out of the Amtrak Trian 501 derailment.

The evidence on this record is clear that Amtrak engaged in an unfair or deceptive act or practice through its omissions to the public regarding its failure to comply with federal regulations. To establish her CPA claim, Plaintiff must establish the following elements: (1)



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation. *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784 (1986).

Washington courts apply a rebuttable presumption of reliance satisfying the causation element of CPA claims based on material omissions. *Morris v lnt'l Yogurt Co.*, 107 Wn.2d 314, 328, 729 P.2d 33 (1986). Here, the connection between Ms. Garza's loss and the deceptive act is simple: Amtrak omitted many matters of material importance to its consumers, like Ms. Garza, who purchased her ticket not knowing matters Amtrak omitted from the public. The omissions here include Amtrak's failures to comply with operable federal safety regulations. The jury will hear from Theresa Impastato, Senior Director of System Safety, who spells out the relationship between Amtrak's omissions and the loss its customers suffered in purchasing train tickets:

> Q: So as an Amtrak passenger, you would want to know if Amtrak was not compliant with the FAST Act before you purchase your ticket; true?
> MR. WACKERBARTH: Object to the form. Asked and answered.
> THE WITNESS: Yes.
> By Mr. DRISCOLL:
> Q: Because that might impact if you're going to seek an alternative method of transportation; true?
> A: Yes

Garza Dkt. 34 (Cochran Dec. Ex. 12 at 12:16-25). And under the CPA, no monetary damages need be proven so long as there is some injury to property or business, and it is sufficient injury to satisfy this element of a CPA claim when a plaintiff is deprived of the use of her property.
PLAINTIFF'S TRIAL BRIEF

3:18-cv-05106-BHS



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

*Sorrel v. Eagle Healthcare, Inc.*, 110 Wash. App. 290, 298, 38 P.3d 1024, 1029 (2002). Nor can Defendant defeat a CPA claim merely by asserting that it refunded a passenger's ticket. Injury under the CPA is met upon proof that the plaintiff's "property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal." *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 57, 204 P.3d 885, 899 (2009); *Mason v. Mortgage Am., Inc.*, 114 Wash.2d 842, 854, 792 P.2d 142 (1990) (temporary loss of use of property while brokerage company improperly withheld title constituted sufficient injury to support attorney fee award under the CPA).

When the trial date comes up for Plaintiff (or the consolidation of Plaintiffs) to present the CPA trial, Plaintiff anticipates an expediate and concise trial on this claim.

## V.     CONCLUSION

Plaintiff looks forward to presenting her case when it is set to commence on October 29, 2019, or otherwise on the Court's next available date for this trial.



PLAINTIFF'S TRIAL BRIEF

3:18-cv-05106-BHS

8 of 9

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

RESPECTFULLY Submitted this 8th day of October, 2019.

PFAU COCHRAN VERTETIS AMALA PLLC

By: /s/ Darrell L. Cochran
Darrell L. Cochran, WSBA No. 22851
Thomas B. Vertetis, WSBA No. 29805
Christopher E. Love, WSBA No. 42832
Nicholas B. Douglas, WSBA No. 49786
Andrew S. Ulmer, WSBA No. 51227
PFAU COCHRAN VERTETIS AMALA PLLC
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Telephone: (253) 777-0799
Facsimile: (253) 627-0654
darrell@pcvalaw.com
tom@pcvalaw.com
chris@pcvalaw.com
cole@pcvalaw.com
aulmer@pcvalaw.com

*Attorneys for Plaintiff*

PUTNAM LIEB POTVIN

By: /s/ Kim Putnam
Kim Putnam, WSBA No. 10924
Kathryn N. Potvin, WSBA No. 33993
Dustin Dailey, WSBA No. 39369
PUTNAM LIEB POTVIN
907 Legion Way SE
Olympia, WA 98501
kimrp@putnamlieb.com
kathrynp@putnamlieb.com
dustind@putnamlieb.com

*Attorneys for Plaintiff*



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

# CERTIFICATE OF SERVICE

I, **Sarah Awes**, hereby declare under penalty of perjury under the laws of the State of Washington that that I am employed at Pfau Cochran Vertetis Amala, PLLC, and that on the below date I caused to be served the foregoing document on:

Tim Wackerbarth
Andrew Yates
Warren Babb
Lane Powell, PC
1420 Fifth Ave. Ste. 4200
PO Box 91302
Seattle, WA 98111-9402

*Attorneys for Defendant*

Mark S. Landman, Pro Hac Vice
John A. Bonventre, Pro Hac Vice
Landman Corsi Ballaine & Ford, PC
120 Broadway, 13th Floor
New York, NY 10271

*Attorneys for Defendant*

Kim Putnam
Kathryn N. Potvin
Dustin Dailey
Putnam Lieb Potvin
907 Legion Way SE
Olympia, WA 98501

*Attorneys for Plaintiff*

( ) Via U.S. Mail
( ) Via Facsimile
(X) ECF
( ) Via Email



**DATED** this 8th day of October, 2019.

/s/ Sarah Awes
Sarah Awes

PLAINTIFF'S TRIAL BRIEF

Page 11 | 3:18-cv-05106-BHS



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654